IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANGEL LUIS GARCÍA ESPINAL,<br><br>          Petitioner,<br><br>     v.<br><br>GARRETT J. RIPA, TODD LYONS, KRISTI NOEM, PAMELA BONDI, and the DEPARTMENT OF HOMELAND SECURITY,<br><br>          Respondents. | Civ. No. 26-1039 (GMM) |

## OPINION AND ORDER

Before the Court are Angel Luis García Espinal's ("Petitioner" or "Mr. García") *Writ of Habeas Corpus*, at Docket No. 1; *Emergency Motion Requesting Temporary Restraining Order* ("*Emergency Motion*"), at Docket No. 3; and *Motion Requesting Issuance of an Order to Show Cause* ("*Show Cause Order*"), at Docket No. 7.

Pursuant to the reasoning below, this Court **GRANTS** the *Emergency Motion* as to Petitioner's request for a Temporary Restraining Order ("TRO"); **GRANTS** the *Show Cause Order*; and **HOLDS IN ABEYANCE** the *Writ of Habeas Corpus* as to the remaining prayers for relief. This Court hereby **ORDERS** that the United States, its agencies, and employees shall not transfer Petitioner outside of the jurisdiction of Puerto Rico and that he be granted a bond hearing conducted by an Immigration Judge under the Department of

Justice's Executive Office for Immigration Review ("EOIR"). The Court also **ORDERS** the Government to show cause as to why the petition for writ of habeas corpus should not be granted.

## I. INTRODUCTION

"Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty" that is protected by the Due Process Clause. United States v. Zadvydas, 533 U.S. 678, 690 (2001). Upon analysis of the two federal statutes — whose texts have recently been the subject of scrutiny by both administrative and federal forums — the Court concludes, for purposes of the requested temporary injunctive relief, that Mr. García has demonstrated a strong likelihood of entitlement to a bond hearing.

## II. BACKGROUND

Mr. García, a citizen of the Dominican Republic, entered Puerto Rico at the age of 18 without inspection on or about October 18, 2008. (Docket No. 1 at 1). On August 8, 2022, Mr. García married Magali Vargas Ocasio, a U.S. citizen. (Docket No. 1-1 at 1). They have two U.S. citizen daughters. (Id. at 2; Docket No. 1 at 2). On September 1, 2022, Mr. García's wife filed a I-130 Form, or "Petition for [Noncitizen] Relative," with the United States Citizenship and Immigration Services ("USCIS"), which is the

**Civ. No. 26-1039 (GMM)**
**Page -3-**

initial step for a U.S. citizen to sponsor a relative for legal residency in the United States. (Docket No. 1 at 1, 6). That application is currently pending. (Id.).

On January 9, 2026, Mr. García was arrested by United States Immigration and Customs Enforcement ("ICE") agents at his place of work during a nonviolent enforcement operation. (Id. at 2, 6). According to the *Writ of Habeas Corpus*, Mr. García was relocated to Aguadilla Processing Center, where he remains under custody. (Id.). Mr. García alleges that the following federal officials (collectively, "Government") authorize his detention: Garrett J. Ripa, Miami Field Office Director for ICE, who oversees Puerto Rico's Immigration and Removal Operations conducted at the ICE Office in GSA Guaynabo Detention Facility; Todd Lyons, Acting Director for ICE; Kristi Noem, Secretary of Homeland Security; and Pamela Bondi, United States Attorney General. (Id. at 4-5). These Government officials, according to Mr. García, have denied him the opportunity for a custody redetermination hearing ("bond hearing") before an Immigration Judge, alleging that he has been informed that his detention is being treated as governed by 8 U.S.C. § 1225 and that, on that basis, he is not entitled to a bond hearing under recent administrative case law. (Id. at 3).

On January 23, 2026, Mr. García filed a verified *Writ of*

**Civ. No. 26-1039 (GMM)**
**Page -4-**

*Habeas Corpus*. (Id.). Mr. García alleges his detention violates his procedural due process rights to challenge his detention under the Fifth Amendment to the United States Constitution. (Id. at 8-9). Mr. García contends that, if he is afforded a bond hearing, he would be able to demonstrate that he is not a flight risk, poses no danger to the community, and would be eligible for Cancelation of Removal under 8 U.S.C. § 1229(c) or under Section 240(b) of the Immigration and Nationality Act ("INA"), as he has no criminal history, has over ten years of residence within the United States, and has strong family ties in the country. (Id. at 2).

    Mr. García seeks, in part, an immediate TRO prohibiting the Government, their agents, and employees from transferring Petitioner out of the District of Puerto Rico until he receives a bond hearing and until his writ of habeas corpus is fully reviewed by this Court. (Id. at 10). In addition, Mr. García asks this Court to grant his habeas petition and to award him reasonable costs and attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. (Id.). To accompany Mr. García's habeas petition, he has submitted copies of multiple government documents: his marriage certificate; his eight-year-old daughter's birth certificate; his USCIS notice that his I-130 form was received in 2022; proof of remittances to the Dominican Republic; his Dominican

**Civ. No. 26-1039 (GMM)**
**Page -5-**

Republic passport; evidence of his registration with the Puerto Rico government including a water bill, his driving record, and license; and a copy of his U.S. federal government tax returns. *See generally* (Docket No. 1-1).

Three other motions were filed by Petitioner on January 23, 2026. First, an *Emergency Motion* was filed, which asks the Court to grant an immediate TRO. (Docket No. 3). Second, Petitioner filed a *Motion Submitting Summons to Be Issued*; said summons were then promptly issued by the Clerk's Office. (Docket Nos. 2, 4). Lastly, Petitioner filed a *Motion Submitting Summons Executed* as to Mr. Ripa, Mr. Lyons, and Secretary Noem, and affirming that Attorney General Bondi was served via certified mail. (Docket No. 6).

At this emergency juncture, the Court only addresses whether to issue a TRO.[1]

---

[1] To the extent that this Court must review Petitioner's *Writ of Habeas Corpus* – without deciding the merits of the habeas petition - to review Petitioner's prayer for a TRO, it has the jurisdiction to do so. *See* 28 U.S.C. § 2241(c)(3) (providing federal courts with jurisdiction to review habeas petitions filed by immigration detainees who assert that they are "in custody in violation of the Constitution or laws or treaties of the United States"). Moreover, as pled, Petitioner alleges having exhausted his administration remedies by filing a *Motion for Bond*. *See* (Docket No. 1 at 9). Nevertheless, this Court currently refrains from deciding the habeas. *See also* Aguilar v. U.S. Immigr. & Customs Enf't, 510 F.3d 1, 11 (1st Cir. 2007).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 65(b) controls this Court's analysis. TROs can be issued with or without notice to the adverse parties. Fed. R. Civ. P. 65(b)(1).

Courts have interpreted the standard for issuing a TRO "the same as [those] for a preliminary injunction." Servicios Legales de P.R., Inc. v. Unión Independiente de Trabajadores de Servicios Legales, 376 F. Supp. 3d 163, 166 (D.P.R. 2019) (citation omitted). In order for a district court to grant a TRO, a plaintiff "'must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that the injunction is in the public interest." Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). Petitioner "bears the burden of demonstrating that these four factors weigh in its favor." Esso Standard Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006).

A TRO, like a preliminary injunction, is "an extraordinary and drastic remedy that is never awarded as of right." Peoples Fed. Sav. Bank, 672 F.3d at 8-9 (quoting Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011);

**Civ. No. 26-1039 (GMM)**
**Page -7-**

*accord* Mass. Coal. of Citizens with Disabilities v. Civ. Def. Agency & Off. of Emergency Preparedness, 649 F.2d 71, 76 n.7 (1st Cir. 1981). "[T]rial courts have wide discretion in making judgments regarding the appropriateness of" TRO relief. Sanchez v. Esso Standard Oil Co., 572 F.3d 1, 14 (1st Cir. 2009). Thus, granting a TRO is "a matter for the discretion of the district court and is reversible, of course, only for an abuse of discretion." Planned Parenthood League of Mass. v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. 1981) (citation omitted).

### IV. APPLICATION OF LAW

Notice has been provided consistent with Rule 65(b). *See* (Docket Nos. 5, 6) (demonstrating summons has been issued and executed as to all Government officials); *see also* Muñiz-Negrón v. Worthington Cylinder Corp., No. 17-CV-1985-RAM, 2021 WL 5313002, at *2 (D.P.R. Aug. 16, 2021). As such, the Court proceeds to the TRO analysis.

A.  Likelihood of Success on the Merits

To assess whether Petitioner is likely to succeed on the merits in requesting a bond hearing, the Court must first address the threshold question of which statute provides the Government with the legal basis to detain Mr. García.

The INA affords the Government the authority to detain certain

**Civ. No. 26-1039 (GMM)**
**Page -8-**

noncitizens. Importantly, the INA differentiates between mandatory detention and discretionary detention. Only the latter provides a detainee with an entitlement to a bond hearing before an Immigration Judge. Two statutory provisions control this distinction: 8 U.S.C. §§ 1225 and 1226.

Section 1225 governs the detention of noncitizens who have not been "admitted" under the INA. As relevant here, Section 1225 provides for inspection of "[a]ll [noncitizens] . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States." 8 U.S.C. § 1225(a)(3). An "applicant for admission" is defined as "[a noncitizen] present in the United States who has not been admitted or who arrives in the United States . . . ." Id. § 1225(a)(1). Notably, Section 1225(b)(2) marshals a mandatory detention scheme by providing that, for noncitizens who are "applicant[s] for admission, if the examining immigration officer determines that a [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] shall be detained for a proceeding under section 1229a [for full removal proceedings]." Id. § 1225(b)(2)(A). Detention under Section 1225(b)(2) is generally mandatory, and the statute does not authorize bond hearings. *See* Jennings v. Rodriguez, 583 U.S. 281, 297 (2018).

**Civ. No. 26-1039 (GMM)**
**Page -9-**

Section 1226, by contrast, governs the "usual removal process" and affords noncitizens procedural protections not available in expedited removal proceedings. *See* Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 108 (2020). Under Section 1226, a noncitizen who is "arrested and detained" faces three potential outcomes: the Attorney General "may continue to detain the arrested [noncitizen]"; the Attorney General "may release the [noncitizen] on bond of at least $1,500"; or the Attorney General "may release the [noncitizen] on conditional parole." 8 U.S.C. § 1226(a). Section 1226(a) therefore "establishes a discretionary detention framework for noncitizens." Gomes v. Hyde, No. 25-CV-11571-JEK, 2025 WL 1869299, at *1 (D. Mass. July 7, 2025).

Where removal and detention of a noncitizen is discretionary, rather than mandatory, Section 1226(a) entitles a noncitizen to an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change. *See also* Rodriguez Diaz v. Garland, 53 F.4th 1189, 1202 (9th Cir. 2022); Doe v. Tompkins, 11 F.4th 1, 2 (1st Cir. 2021) (holding that the Government bears the burden of proving at an initial bond hearing held under Section 1226(a) that (1) a noncitizen poses a danger to the community based

**Civ. No. 26-1039 (GMM)**
**Page -10-**

on clear and convincing evidence, or (2) the noncitizen poses a flight risk based on a preponderance of the evidence); Brito v. Garland, 22 F.4th 240, 246 (1st Cir. 2021) (same).

Excepted from the general rule of discretionary detention under Section 1226(a) are noncitizens involved in specific enumerated criminal activities. 8 U.S.C. § 1226(c)(1). Under Section 1226(c), in accordance with the Laken Riley Act enacted in January 2025, the Government is required to detain certain noncitizens who fall within the statute's criminal categories of being in the country without inspection and committing specific crimes. *See* Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025) (adding 8 U.S.C. § 1226(c)(1)(E)).

   1.  Mr. García is discretionarily detained

According to the *Writ of Habeas Corpus*, Mr. García believes he is detained under Section 1226 and is therefore entitled to a bond hearing. (Docket No. 1 at 3). The Government, as alleged by Petitioner, believes that Mr. García's detention falls under Section 1225's ambit and therefore Mr. García should be denied a bond hearing. (Id.).

As pled, Mr. García entered the country without authorization in 2008, has a pending I-130 application to become a lawful permanent resident by way of a U.S. citizen relative, and was

**Civ. No. 26-1039 (GMM)**
**Page -11-**

arrested and detained by ICE officials in January 2026. *See generally* (Docket No. 1). Given that Section 1226(a) governs detention for noncitizens who were "arrested and detained" while residing in the United States, interpreting Section 1225(b)(2) to apply to this same category would render it and amendments under the Laken Riley Act superfluous. *See* Gomes, 2025 WL 1869299, at *6-7 (outlining statutory interpretation of Section 1226(a) and Section 1225(b)(2) that demonstrates that an arrest and detention of noncitizens residing in the United States cannot fall under Section 1225(b)(2)). Such an interpretation would also conflict with the INA's structural distinction between arriving applicants for admission and noncitizens already present in the United States and arrested within the country.

Thus, at this juncture, and based solely on the allegations in the petition, the Court finds that Mr. García has shown a substantial likelihood that his detention is governed by Section 1226(a)'s discretionary regime. This interpretation aligns with the statutory distinction between arriving applicants for admission (governed by Section 1225) and noncitizens who are already present in the United States and are later arrested and detained (governed by Section 1226). Again, applying Section 1225(b)(2) to this factual posture would blur that distinction and

**Civ. No. 26-1039 (GMM)**
**Page -12-**

render Section 1226(a) effectively redundant. *See* Gomes, 2025 WL 1869299, at *6-7. Nor, with the information that this Court has before it, has Mr. García disclosed any criminal record at all, which could otherwise subject him to the mandatory detention exception outlined under Section 1226(c). *See* (Docket No. 1 at 2); Hernandez-Lara v. Lyons, 10 F.4th 19, 26-27 (1st Cir. 2021); Rodriguez-Diaz, 53 F.4th at 1196.

Accordingly, the Court proceeds under the assumption that Section 1226(a) applies, subject to further factual development.

2. <u>Petitioner is likely to succeed on the merits</u>

Where removal and detention of a noncitizen is discretionary, rather than mandatory, Section 1226(a), entitles a noncitizen to an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change. Rodriguez-Diaz, 53 F.4th at 1202; *see also* Doe, 11 F.4th at 2.

From the record before this Court, the Government has allegedly grounded its decision to not grant a bond hearing in a recent Board of Immigration Appeals decision: Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025). In that decision, the Board concluded that Immigration Judges lack jurisdiction over custody

redeterminations for certain noncitizens present in the United States without admission. Id. at 220-28. The Government allegedly believes that Matter of Yajure Hurtado should tie this Court's hands and bind it from acting further.

This Court disagrees. This Court is not bound by BIA interpretations that conflict with the statutory text or with controlling judicial precedent. *See* Loper Bright Enters. v. Raimondo, 603 U.S. 369, 400 (2024) (noting "agencies have no special competence in resolving statutory ambiguities," but "(c)ourts do").

To the contrary, district courts that have considered this issue have, after conducting persuasive, well-reasoned analyses of the statutory language and legislative history, rejected Matter of Yajure Hurtado's interpretation and routinely upheld the right to a bond hearing under circumstances akin to those of Petitioner. *See, e.g.*, Sampiao v. Hyde, 799 F. Supp. 3d 14, 29 n.11 (D. Mass. 2025) (noting the court's disagreement with the BIA's analysis in Yajure Hurtado); Elias Escobar v. Hyde, No. 25-CV-12620, 2025 WL 2823324, at *3 (D. Mass. Oct. 3, 2025); Moreira Aguiar v. Moniz, No. 25-CV-12706, 2025 WL 2987656, at *3 (D. Mass. Oct. 22, 2025); Tomas Elias v. Hyde, No. 25-CV-540, 2025 WL 3004437, at *3 (D.R.I. Oct. 27, 2025); Lora-Salazar v. Ripa, No. 26-CV-1014-MAJ (D.P.R.

**Civ. No. 26-1039 (GMM)**
**Page -14-**

Jan. 13, 2026) (Docket Nos. 5, 13). In the same vein, district courts have similarly rejected the adoption of a broad interpretation of 1225(b)(2) that would, consequently, generate overlap with Section 1226(a) as to erroneously deny the noncitizen's right to a bond hearing. *See generally* Jimenez v. FCI Berlin, Warden, 799 F. Supp. 3d 59 (D.N.H. 2025); Rodriguez v. Nessinger, No. 25-CV-505, 2025 WL 3306576 (D.R.I. Oct. 17, 2025); Doe v. Moniz, 800 F. Supp. 3d 203 (D. Mass. 2025); Loa Caballero v. Baltazar, No. 25-CV-3120, 2025 WL 2977650 (D. Colo. Oct. 22, 2025); dos Santos v. Noem, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); Guerrero Orellana v. Moniz, No. 25-CV-12664-PBS, 2025 WL 2809996 (D. Mass. Oct. 3, 2025) (granting a preliminary injunction to release a Petitioner unless provided with a bond hearing compliant with Hernandez-Lara).

This Court joins its sister courts. This Court finds that Petitioner has demonstrated a strong likelihood of success on the merits of his claim that, because he is being detained pursuant to Section 1226(a), he is entitled to a bond hearing.

B.   Irreparable Harm

The Court turns next to the irreparable harm prong of a TRO analysis. When evaluating the expedition of equitable relief, "[an] injunction should issue only where [it is] essential in order

**Civ. No. 26-1039 (GMM)**
**Page -15-**

effectually to protect . . . rights against injuries otherwise irremediable." Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982) (*quoting* Cavanaugh v. Looney, 248 U.S. 453, 456 (1919)). Here, the "irremediable" injury would be threefold: detention; removal from this Court's jurisdiction pending Mr. García's habeas corpus proceedings; and the ensuing, imminent consequences that such removal would have on his person and his rights.

Without a bond hearing, Mr. García faces a potentially prolonged period of detention, depriving him of his liberty. Ferrara v. United States, 370 F. Supp. 2d 351, 360 (D. Mass. 2005) ("Obviously, the loss of liberty is a . . . severe form of irreparable injury."). During this time, Mr. García would also face a substantial risk of confinement in facilities that courts have repeatedly found raise serious health, safety, and due process concerns. *See, e.g.*, Mercado v. Noem, 800 F. Supp. 3d 526, 545 (S.D.N.Y. 2025) (discussing allegations of "significant overcrowding, pervasive unsanitary conditions, lack of basic hygiene resources, insufficient food and water, inadequate sleeping conditions, substandard medical care, and extremely significant restrictions on attorney-client communications" in a New York immigration detention center).

Moreover, without the issuance of a TRO, Mr. García would be

**Civ. No. 26-1039 (GMM)**
**Page -16-**

likely transferred to an immigration detention facility in mainland United States and separated from his counsel – which would materially interfere with his ability to access counsel and to litigate his habeas petition. *See, e.g.*, Aguilar, 510 F.3d at 6 (detailing the transferring of noncitizen detainees out of their original jurisdiction, which impeded access to legal and administrative support).

As such, the Court finds this factor also weighs in Mr. García's favor.

C.   Balance of Equities and Public Interest

When the Government is the opposing party, the balance of equities and the public interest merge. Nken v. Holder, 556 U.S. 418, 435 (2009). Where a petitioner has demonstrated a likelihood that the Government's conduct is inconsistent with governing law, these factors weigh in favor of injunctive relief. *See* Hernandez-Lara v. Lyons, 10 F.4th 19 at 41. Moreover, there is no public interest in the enforcement of unlawful agency action. Nken, 556 U.S. at 436.

### IV.   CONCLUSION

Based on the *Writ of Habeas Corpus* and accompanying motions, (Docket Nos. 1-3, 6-7), this Court finds at this juncture that irreparable harm is likely to befall Mr. García if he is not

**Civ. No. 26-1039 (GMM)**
**Page -17-**

afforded a bond hearing.

As such, this Court **GRANTS** the *Emergency Motion* as to Petitioner's request for a TRO; **GRANTS** the *Show Cause Order*; and **HOLDS IN ABEYANCE** the *Writ of Habeas Corpus* as to the remaining prayers for relief. This Court **ORDERS** that the Government shall not transfer Petitioner outside of Puerto Rico and that he be granted a bond hearing before an Immigration Judge, no later than February 3, 2026 at 5:00 P.M. The Government shall inform by February 4, 2026 whether such bond hearing has been held and its outcome. The Court also **ORDERS** the Government show cause as to why the Petitioner's *Writ of Habeas Corpus* shall not be granted by February 4, 2026 at 5:00 P.M.

This Order grants only temporary injunctive relief and does not adjudicate the merits of the *Writ of Habeas Corpus*.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on January 23, 2026.

/s/ Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE